Michael Lee (ML 6353)
Lee Law PLLC
579 Fifth Avenue, 14th Floor
New York, NY 10017
Telephone: (212) 621-8239
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOSSIL GROUP, INC.; MICHAEL KORS L.L.C.; and DIESEL, S.P.A.<br><br>    Plaintiffs,<br><br>v.<br><br>TARGETTIME CORP; JACOB HATANIAN; and JOHN DOES 2-5,<br><br>    Defendant. | CASE NO.  1:20-cv-02819 (BMC)<br><br><br>**AMENDED COMPLAINT** |

Fossil Group, Inc. ("Fossil Group"), Michael Kors L.L.C. ("Michael Kors"), and Diesel S.p.A. ("Diesel") (Fossil, Michael Kors and Diesel are hereinafter collectively referred to as "Plaintiffs") by and through their attorneys of record, complaining of Defendants Targettime Corp, Jacob Hatanian, and John Does 2-5 (hereinafter collectively referred to as "Defendants") hereby allege as follows:

### STATEMENT OF THE CASE

1.    Plaintiffs are the designer, manufacturer and distributor of some of the most iconic, world-famous, and recognizable time pieces in the world. Unfortunately, great success attracts clandestine companies and individuals unjustly enriching themselves by distributing cheap unauthorized imitation watches in order to fool unsuspecting consumers and the public.

2.     This action concerns the importation, offering for sale, actual sale, and other distribution of a significant amount of merchandise bearing counterfeits and infringements of Michael Kors' and Diesel's distinctive trademarks on watches made and distributed by Fossil Group. Defendants received customer feedback that they were selling "fake" watches and despite this, continued to distribute counterfeit watches.

3.     By this conduct, Defendants have willfully infringed Michael Kors' and Diesel's valuable trademarks, creating a strong likelihood of confusion among consumers who expect that merchandise bearing marks confusingly similar to these trademarks is genuine product when it is not. Further, Defendants actions tarnish the goodwill associated with Plaintiffs and their watches.

4.     Plaintiffs have expended a great amount of resources working to create and distribute their luxury line of products and they are compelled to take action for (i) trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1114(a); (ii)  federal trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (iii) unfair competition, false designation of origin and false description in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iv) unlawful importation of goods bearing registered United States trademarks in violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a); and (v) unfair and deceptive business practices in violation of N.Y.Gen.Bus.L. §349. The aforementioned conduct is causing monetary damage and other irreparable injuries to the general public and Plaintiffs.

## **PARTIES**

5.     Fossil Group, Inc. is a Delaware corporation with its principal place of business located at 901 South Central Expressway, Richardson, TX 75080.

6.     Michael Kors, L.L.C. is a Delaware limited liability company with its principal place of business located at 11 West 42nd Street, New York, NY 10036.

7.     Diesel S.p.A. is a company with its principal place of business located at Via Dell'Industria 4-6, Breganze, VI 36042, Italy.

8.     Upon information and belief, defendant Targettime Corp ("Targettime") is a New York corporation with its principal place of business located at 1431 E 12th Street, Brooklyn, NY 11230.

9.     Upon information and belief, defendant Jacob Hatanian ("Hatanian") is an owner of Targettime and therefore has the right and ability to control the actions of the corporate Defendant. Hatanian resides at 1431 East 12th Street, Brooklyn, NY 11230.

10.    The identity of John Does 2-5 are not currently known to Plaintiffs. These John Doe defendants are the operators of Targettime and others associated with the company and its illegal activities.  Plaintiffs will use their best efforts to identify these individuals, and upon further knowledge and investigation, Plaintiffs will amend their pleadings accordingly.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over the federal trademark claims asserted in this action under 15 U.S.C. § 1121, and 28 U.S.C. § 1331 and 28 U.S.C. § 1338. This Court has supplemental subject matter jurisdiction over state law claims pursuant to 28 U.S. C. § 1367(a) in that the state law claims form part of the same case or controversy as the federal claims.

12.    Defendant are subject to the Court's jurisdiction because they reside in, have committed the acts complained of herein, and do business all in this District. Specifically, Defendant are selling Defendants' infringing products in this District.

13.     Defendant are subject to the jurisdiction of this Court pursuant to and in accordance with Rule 4 of the Federal Rules of Civil Procedure.

14.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) (1), (2), and (3).

## FACTUAL ALLEGATIONS

**A.  Fossil Group, Michael Kors, Diesel, and the Michael Kors and Diesel Trademarks**

15.     Fossil Group is a global design, marketing, distribution, and innovation company specializing in a variety of lifestyle accessories. Under a diverse portfolio of owned and licensed brands, Fossil Group makes fashion watches, jewelry, handbags, small leather goods and wearables. Fossil Group stores are operated in some of the most prestigious cities in the world with more than 284 stores in many different countries. Fossil Group owns a number of trademarks for brands used with watches, including but not limited to FOSSIL, MICHELE, RELIC, and SKAGEN.  In addition, Fossil is licensed to manufacture, market, distribute and sell watches under a number of prestigious high quality fashion brands including but not limited to PUMA, Michael Kors, Emporio Armani, DKNY, Kate Spade New York, Tory Burch and Diesel, among others. Fossil Group has been licensed by Michael Kors to manufacture and distribute watches bearing its trademarks since 2004. Fossil Group has been licensed by Diesel to manufacture and distribute watches bearing its trademarks since 1999.

16.     Michael Kors is a global, luxury, and lifestyle brand, founded in 1981, which designs, markets, and distributes a wide variety of high-quality merchandise including, but not limited to, apparel, handbags, wallets, watches, footwear, jewelry, and other accessories. Michael Kors stores are operated, either directly or through licensing partners, in some of the most prestigious cities in the world with more than 550 stores and 1,500 in-store boutiques in many

different countries. Michael Kors has licensed the manufacturing and distributing of its watches to Fossil Group.

17.    Diesel is a global, luxury, and lifestyle brand, founded in 1978, which designs, markets, and distributes a wide variety of high-quality merchandise including, but not limited to, apparel, handbags, wallets, watches, footwear, jewelry, and other accessories. Diesel stores are operated, either directly or through licensing partners, in some of the most prestigious cities in the world with more than 400 stores in more than 80 different countries.

18.    Since inception, Michael Kors and Diesel have used their trademarks and trade name to distinguish their fine quality merchandise and have licensed such use of their trademarks to Fossil Group with respect to watches.  Throughout their storied history, Michael Kors and Diesel have expended great amounts of time, money, and effort advertising and promoting their respective trademarks globally, including throughout the United States and in this District. As a result of these investments and their widespread success, Michael Kors and Diesel have developed considerable goodwill and a reputation for the highest quality products. Michael Kors and Diesel have continuously used their trademarks to distinguish their products and uphold these reputations.

19.    Michael Kors is the owner of various trademarks registered with the United States Patent and Trademark Office ("USPTO"). Such trademarks include, but are not limited to the following, among others:

| Trademark | USPTO Registration Number | Registration Date | Goods |
|---|---|---|---|
| MK MICHAEL KORS | 3,535,310 | 11/18/2008 | IC 014. US 002 027 028 050. G & S: watches. |

5

| MICHAEL KORS | 3,160,981 | 10/17/2006 | IC 014. US 002 027 028 050. G & S: Watches. |
| MICHAEL MICHAEL KORS | 4,052,752 | 11/08/2011 | IC 014. US 002 027 028 050. G & S: Jewelry and watches. |
| MICHAEL KORS ACCESS | 5,571,026 | 09/24/2018 | IC 009. US 021 023 026 036 038. G & S: Wireless communication devices featuring telecommunication functionality to allow the transmission of text, data, audio, image and video files; electronic monitoring devices comprised of microprocessors and accelerometers, for identifying, storing, reporting, monitoring, uploading and downloading data and information for personal physical fitness and training purposes; downloadable mobile applications and software for smart watches and mobile devices for processing, reviewing and editing data to enable users to control the presentation and information available from the devices; wearable sensors for personal physical fitness and training purposes to gather biometric data and also including monitors and displays sold as a unit; Smart watches comprised primarily of wristwatches and also featuring software for sending and receiving data or to be used to monitor personal fitness activity; wearable digital electronic devices comprised primarily of wristwatches, bracelets, rings, or necklaces and also featuring software for sending and receiving data or to be used to monitor personal fitness activity. <br><br> IC 010. US 026 039 044. G & S: Wearable sensors for health and wellness purposes to gather biometric data and also including monitors and |

| | | | |
|---|---|---|---|
| | | | displays sold as a unit.<br><br>IC 014. US 002 027 028 050. G & S: Jewelry.<br><br>IC 042. US 100 101. G & S: Software as a service featuring software to identify, store, report, monitor, upload and download data and information from a wearable digital electronic device. |
| MICHAEL KORS | 5,287,170 | 09/12/2017 | IC 009. US 021 023 026 036 038. G & S: Wireless communication devices featuring telecommunication functionality to allow the transmission of text, data, audio, image and video files; electronic monitoring devices comprised of microprocessors and accelerometers, for identifying, storing, reporting, monitoring, uploading and downloading data and information for personal physical fitness and training purposes; downloadable mobile applications and software for smart watches and mobile devices for processing, reviewing and editing data to enable users to control the presentation and information available from the devices; wearable sensors for personal physical fitness and training purposes to gather biometric data and also including monitors and displays sold as a unit; smart watches comprised primarily of wristwatches and also featuring software for sending and receiving data or to be used to monitor personal fitness activity; wearable digital electronic devices comprised primarily of wristwatches, bracelets, rings, or necklaces and also featuring software for sending and receiving data or to be used to monitor personal fitness activity.<br><br>IC 010. US 026 039 044. G & |

| | | | S: Wearable sensors for health and wellness purposes to gather biometric data and also including monitors and displays sold as a unit.<br><br>IC 014. US 002 027 028 050. G & S: Horological and chronometric instruments, watches, timepieces, watch straps, watch bands; jewelry.<br><br>IC 042. US 100 101. G & S: Software as a service featuring software to identify, store, report, monitor, upload and download data and information from a wearable digital electronic device. |
| JETMASTER | 4,771,775 | 07/14/2015 | IC 014. US 002 027 028 050. G & S: Watches. |

(hereinafter collectively referred to as the "Michael Kors Trademarks").

20.    Diesel is the owner of various trademarks registered with the United States Patent and Trademark Office ("USPTO"). Such trademarks include, but are not limited to the following, among others:

| Trademark | USPTO Registration Number | Registration Date | Relevant Goods |
|---|---|---|---|
| DIESEL BLACK GOLD | 3,956,724 | 05/10/2011 | IC 014. US 002 027 028 050. G & S: Jewelry and costume jewelry, rings being jewelry, bracelets, necklaces, tie-bars, scarf rings, pendants, ear clips, tie clips[, cufflinks of precious metal, ]earrings, [key holders made of precious metals,] brooches,[ pins being jewelry; clocks,] watches, [chronographs] for use as watches, chronometers. |

| | | | |
|---|---|---|---|
|  | 3,225,322 | 04/03/2007 | IC 014. US 002 027 028 050. G & S: [ Jewelry and costume jewelry; ] [ rings being jewelry; bracelets; necklaces; tie-bars; scarf rings; pendants; ear clips; tie clips; cufflinks of precious metal; earrings; key holders made of precious metals; brooches; pins being jewelry; clocks; ] watches [; chronographs for use as watches; chronometers ] |
|  | 2,376,399 | 08/15/2000 | IC 014. US 002 027 028 050. G & S: clocks and parts therefor, watches and parts therefor, watches containing a gaming function, chronographs for use as watches, chronometers; rings, bracelets, necklaces, and jewelry pins. |
| DIESEL | 1,989,390 | 07/30/1996 | IC 014. US 002 027 028 050. G & S: [ clocks and parts therefor, clocks incorporating radio, ] watches and parts therefor, watch chains, watches containing a gaming function, chronographs; [ chronometers; ] rings, bracelets, necklaces, [ hair-clips of precious metal, tie-clips, scarf rings of precious metal, ] pendants, [ ear clips, precious metal ] money clips, cufflinks, [ earrings, ] key-holders; [ of precious metal, brooches, ornamental jewelry pins; ] all in metal precious or not. |

| | | | |
|---|---|---|---|
|  | 1,939,141 | 12/05/1995 | IC 014. US 002 027 028 050. G & S: [ clocks and parts therefor, clocks incorporating radio, ] watches and parts therefor, [ watch chains, watches containing a gaming function, ] chronographs [, chronometers ]; rings, bracelets, necklaces, [ hair-clips of precious metal, tie-clips, scarf rings of precious metal, ] pendants, [ ear clips, precious metal money clips, ]cufflinks [, earrings, key-holders of precious metal, brooches, ornamental jewelry pins; all in metal precious or not ornamental jewelry pins ] |

(hereinafter collectively referred to as the "Diesel Trademarks"). (The Michael Kors Trademarks and the Diesel Trademarks are hereinafter collectively referred to as the "Luxury Brand Trademarks").

21.     The Luxury Brands Trademarks are valid, in full force and effect, protectable, and exclusively owned by Michael Kors and Diesel and licensed to Fossil Group. Michael Kors and Diesel have continuously used the Luxury Brands Trademarks during all time periods relevant to Plaintiffs' claims and Fossil Group has continuously used the Luxury Brands Trademarks on watches during all time periods relevant to Plaintiffs' claims.

22.     The Luxury Brands Trademarks have been used regularly in interstate commerce, including within this District, to identify and distinguish Plaintiffs' high-quality watches manufactured by Fossil Group.

23.     Due to the overwhelming amount of resources exhausted by Plaintiffs in order to create, protect, enforce, and promote the Luxury Brands Trademarks, the Luxury Brands Trademarks have achieved secondary meaning as identifiers of high-quality watches.

24.     The Luxury Brands Trademarks are well-known and recognized around the world and throughout the United States by consumers as signifying authentic, high quality Michael

Kors and Diesel products. As such, the Luxury Brands Trademarks qualify as famous marks as the term is used in 15 U.S.C. § 1125(c)(1) and achieved such fame prior to Defendants' conduct that is the subject of this Complaint.

B. **Defendants' Unauthorized Activities**

25.    Upon information and belief, Defendants are importing, offering for sale, selling, and using in interstate commerce watches bearing counterfeits and infringements of the Luxury Brands Trademarks (the "Infringing Products").

26.    Defendants are willful infringers of the Luxury Brands Trademarks causing irreparable harm to Plaintiffs and the unsuspecting public who are being defrauded into purchasing such illegal merchandise.

27.    Defendant have been offering for sale and selling Infringing Products on the Amazon.com website ("Amazon"), among other places, using the "Targettime" seller name, causing Plaintiffs to investigate such activities.

28.    According to its Amazon storefront, over the last one (1) year, the "Targettime" Amazon seller has sold 51 items through their Amazon online storefront. At least ten percent (10%) of the feedback left for those items are negative, with several referencing purchases as "fake" or "poor quality." On June 23, 2020, a purchaser left a comment that stated: "it was a fake watch, I gad [sic] to return it."

29.    Therefore, prior to the purchases made by Plaintiffs, Defendants were put on prior notice of their infringement by their customers informing them that they have been selling "fake" product but Defendants have knowingly continued to distribute Infringing Products.

30.    Further, Defendants were put on prior notice of their infringement by the United States Customs who seized Infringing Product being imported into the United States.

31.     U.S. Customs & Border Protection ("Customs") periodically conducts inspections of merchandise imported into the United States. Pursuant to one such inspection that occurred on or about October 26, 2019, Customs provided Michael Kors with a Notice of Seizure of Infringing Merchandise ("Notice of Seizure") identifying "Jacob Hatanian, 1431 East 12th Street, Brooklyn, NY 11230" as the importer of record of 50 "Michael Kors" Watches. Customs determined that these watches were Infringing Product and seized said product.

32.     The 1431 East 12th Street address is both the home address for Hatanian and principal place of business for Targettime. Upon information and belief, Hatanian was importing Infringing Product to be sold through Targetttime. Upon information and belief, Hatanian is an owner of Targettimeand directly involved with the unauthorized activities described herein and therefore personally liable for the infringement of the Luxury Brands Trademarks.

33.     Despite the notice from customers on Amazon and the Notice of Seizure specifically putting Defendants on notice about their illegal conduct, their unauthorized activities concerning the Luxury Brands Trademarks continued.

34.     On or about January 21, 2020, Fossil Group's agent made a purchase from the "Targettime" Amazon seller of two (2) "Diesel" watches (the "Purchases").

35.     Subsequently, Fossil Group received and reviewed the Purchases and confirmed that the Purchases were both not authentic Diesel merchandise and did, in fact, bear counterfeits and infringements of the Diesel Trademarks.

36.     On or about April 16, 2020, Fossil Group sent Defendant a cease and desist letter, putting them on specific notice of their illegal activities, demanding that they immediately cease the sale of any Infringing Products, and comply with further demands.

37.     On or about May 15, 2020, Fossil Group's attorney was contacted by Tuvia Rotberg of Amster Rothstein & Ebenstein LLP, stating that the firm would be representing Defendants and requested more information on the matter.

38.     Fossil Group's attorney supplied Mr. Rotberg evidence of his client's counterfeiting and infringing behavior but Defendants refused to provide details on the source of the Infringing Products and the amount of such purchases and sales of Infringing Product.

39.     Based upon the negative feedback of their products from buyers on Amazon and the notice by Customs, Defendants were fully aware of their illegal activities and it is clear that Defendants' infringement of the Luxury Brands Trademarks is willful.

40.     Defendants' offer for sale and sale of the Infringing Products constitutes an illegal use in commerce of the Luxury Brands Trademarks in connection with the sale, offering for sale, or distribution of the Infringing Products.

41.     The Infringing Products offered for sale and sold by Defendants were not manufactured, authorized, or sponsored by Plaintiffs. Thus, consumers will be confused and disappointed by the differences between the Infringing Products distributed by Defendants and the genuine Michael Kors and Diesel merchandise manufactured and sold by Fossil Group.

42.     As a result of Defendants' actions, Plaintiffs are losing profits from lost sales of genuine product, suffering a loss of enormous goodwill created in its Luxury Brands Trademarks and in Fossil Group, and will continue to suffer such loss if Defendants are allowed to continue their illegal activity.

43.     Upon information and belief, Defendants have knowingly and willfully engaged in their illicit activities in direct violation of Plaintiffs' rights and/or have shown a blatant

disregard for the same. For these reasons, this qualifies as an exceptional case under 15 U.S.C. § 1117(a).

44.     Plaintiffs have suffered irreparable injury as a direct and proximate result of Defendants' wrongful distribution of the Infringing Products.

45.     Plaintiffs have no adequate remedy at law.

46.     Defendants' unlawful acts will undoubtedly persist without judicial intervention. As such, Defendants must be restrained and enjoined from further violating Plaintiffs' well-established rights in and to the Luxury Brands Trademarks.

## FIRST CLAIM FOR RELIEF
### (Trademark Counterfeiting, 15 U.S.C. § 1114)

47.     Plaintiffs hereby reallege and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 46.

48.     Defendants have knowingly, intentionally, and without the consent of Plaintiffs used in commerce reproductions, counterfeits, and/or copies and/or spurious designations that are identical with, or substantially indistinguishable from the Luxury Brands Trademarks in connection with the sale, offering for sale, distribution, or advertising of goods covered by USPTO registrations for the Luxury Brands Trademarks. Such use is likely to: cause confusion or mistake or deceive consumers; cause consumers to believe Defendants' counterfeit merchandise is affiliated with, sponsored by, authorized or approved by, or is otherwise associated with Plaintiffs despite the fact that it is not.

49.     Defendants have intentionally used these reproductions, counterfeits, and/or copies and/or spurious designations that are identical with, or substantially indistinguishable from the Luxury Brands Trademarks, knowing they are counterfeit, in connection with the

advertisement, promotion, sale, offering for sale, and distribution of goods.

50. Defendants' use of the Luxury Brands Trademarks to advertise, promote, offer for sale, distribute and sell goods bearing counterfeits was and is without the consent of Plaintiffs.

51. Defendants' use of the counterfeit marks was willful and done with the knowledge that the marks are counterfeit, and as such, Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

52. Defendants' acts constitute use in commerce of the Luxury Brands Trademarks.

53. For the aforementioned reasons, Plaintiffs are entitled to: (a) damages for all of Defendants' profits derived from their unlawful conduct and/or Plaintiffs' lost profits from sales of genuine goods due to Defendants' conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. § 1117(a)-(b), or alternatively, statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest according to 15 U.S.C. § 1117(b).

54. Plaintiffs have no adequate remedy at law for Defendants' ongoing wrongful conduct. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## SECOND CLAIM FOR RELIEF
### (Trademark Infringement, 15 U.S.C. §1114)

55. Plaintiffs hereby reallege and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 46.

56. Based on Plaintiffs' extensive advertising under the Luxury Brands Trademarks, its extensive sales and the wide popularity of Michael Kors and Diesel products, the Luxury Brands Trademarks have acquired secondary meaning such that any product and advertisement

bearing such trademarks is immediately associated by purchaser and the public as being a product and affiliate of Plaintiffs.

57.     Defendants' activities constitute Defendants' use in commerce of the Luxury Brands Trademarks. Defendants use the Luxury Brands Trademarks in connection with Defendants' sale, offers for sale, distribution, promotion, and advertisement of their goods bearing infringements and/or counterfeits of the Luxury Brands Trademarks.

58.     Defendants have used the Luxury Brands Trademarks, knowing that they are the exclusive property of Plaintiffs, in connection with their sale, offers for sale, distribution, promotion, and advertisement of their goods bearing counterfeits or infringements of the Luxury Brands Trademarks.

59.     Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned, or authorized by Plaintiffs to use the Luxury Brands Trademarks to advertise, manufacture, distribute, offer for sale, or sell goods bearing the Luxury Brands Trademarks when Defendants are not so authorized.

60.     Defendants engage in the aforementioned activity with the intent to confuse and deceive the public into believing that they and the goods they sell are in some way sponsored, affiliated, or associated with Plaintiffs, when in fact they are not.

61.     Defendants' use of the Luxury Brands Trademarks has been without the consent of Plaintiffs, is likely to cause confusion and mistake in the minds of the public and, in particular, tends to and does falsely create the impression that the goods advertised, promoted, distributed, and sold by Defendants are warranted, authorized, sponsored, or approved by Plaintiffs when, in fact, they are not.

62.     Defendants' unauthorized use of the Luxury Brands Trademarks has resulted in

Defendants unfairly benefiting from Plaintiffs' advertising and promotion, and profiting from the reputation of Plaintiffs and the Luxury Brands Trademarks, to the substantial and irreparable injury of the public, Plaintiffs, and the Luxury Brands Trademarks and the substantial goodwill represented thereby.

63.     Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

64.     By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing three (3) times Plaintiffs' damages and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

65.     Plaintiffs have no adequate remedy at law for Defendants' ongoing wrongful conduct. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

**THIRD CLAIM FOR RELIEF**
**(Unfair Competition, False Designation of Origin & False Description, 15 U.S.C. §1125(a))**

66.     Plaintiffs hereby reallege and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 46.

67.     Defendants' sale, offering for sale, distribution, or advertising of goods bearing the Luxury Brands Trademarks constitutes use in commerce of false designations of origin and false and misleading descriptions and representations that Defendants' counterfeit merchandise is affiliated with, sponsored by, authorized or approved by, or is otherwise associated with Plaintiffs despite the fact that it is not. As a result of Defendants' unauthorized use of the Luxury Brands Trademarks, the public is likely to be misled and confused as to the source, sponsorship,

or affiliation of Defendants' counterfeit merchandise.

68.     Defendants' sale, offering for sale, distribution, or advertising of goods bearing the Luxury Brands Trademarks constitutes unfair competition as it is intended to cause confusion and deceive consumers and trades upon the established reputation and goodwill of Plaintiffs.

69.     Defendants' conduct is willful, intended to reap the benefit of Plaintiffs' established goodwill, and violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), all to the severe detriment of Plaintiffs.

70.     Defendants' acts entitle Plaintiffs to damages for all of Defendants' profits derived from their past unlawful conduct and/or for all of Plaintiffs' lost profits from lost sales of genuine goods due to Defendants' conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. §1117(c).

71.     Plaintiffs have no adequate remedy at law for Defendants' ongoing wrongful conduct. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## FOURTH CLAIM FOR RELIEF
### (Federal Trademark Dilution, 15 U.S.C. § 1125(c))

72.     Plaintiffs hereby reallege and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 46.

73.     Defendants' use of the Luxury Brands Trademarks or marks confusingly similar thereto in order to sell their products constitutes Defendants' commercial use in commerce of the Luxury Brands Trademarks.

74.     The Luxury Brands Trademarks are world famous and distinctive. They achieved

such status long prior to Defendants' activities complained of herein.

75.     Defendants' use of the Luxury Brands Trademarks on the Internet to advertise unauthorized merchandise constitutes tarnishment of the Luxury Brands Trademarks.

76.     Plaintiffs are suffering and will continue to suffer irreparable harm from Defendants' dilutive activities.

77.     Defendants' acts as aforesaid are diluting the distinctive quality of the Luxury Brands Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

78.     Defendant have intentionally and willfully appropriated the Luxury Brands Trademarks and traded on Plaintiffs' reputations.

79.     Defendants' wrongful acts of dilution will continue unless enjoined by this Court.

### FIFTH CLAIM FOR RELIEF
**(Unlawful Importation of Goods Bearing Registered United States Trademarks in Violation of Section 526(a) of the Tariff Act,
19  U.S.C. § 1526(a))**

80.     Plaintiffs hereby re-allege and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 46.

81.     Defendants' acts alleged herein constitute the importation of merchandise which bears imitations of the Michael Kors Trademarks without Plaintiffs' consent, in violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a).

82.     Defendants' use of the infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

83.     Defendants' acts entitle Plaintiffs to damages for all of Defendants' profits derived from their past unlawful conduct and/or for all of Plaintiffs' lost profits from lost sales of genuine goods due to Defendants' conduct, trebled, to the full extent provided under Sections

35(a) and 35(b) of the Lanham Act, 15 U.S.C. §  1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

84.    Plaintiffs have no adequate remedy at law for Defendants' ongoing wrongful conduct. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## SIXTH  CLAIM FOR RELIEF:
### (Unfair and Deceptive Business Practices, N.Y. Gen. Bus. L. § 349)

85.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 46 of this Complaint.

86.    The wrongful conduct of Defendants, including but not limited to the distribution of Infringing Product, is deceptive trade practices under New York General Business Law § 349.

87.    This wrongful conduct was consumer-oriented within the meaning of Section 349 as it is the intent of Defendants to distribute Infringing Products into the marketplace and therefore harm the general consuming public.

88.    Because of this deceptive conduct, Plaintiffs have been and will continue to be damaged both monetarily and in ways impossible to remedy through monetary judgment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court order the following relief:

I.    That the Court enter an injunction ordering that Defendant, their agents, servants, employees, and all other persons in privity or acting in concert with them be enjoined and restrained from:

a)    using any counterfeit or infringement of the Luxury Brands Trademarks to identify any

goods not authorized by Plaintiffs;

b)   counterfeiting or infringing the Luxury Brands Trademarks by importing, manufacturing, distributing, selling, offering for sale, advertising, promoting, displaying any products bearing any simulation, reproduction, counterfeit, or copy of the Luxury Brands Trademarks;

c)   using any simulation, reproduction, counterfeit, or copy of the Luxury Brands Trademarks in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiffs, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiffs,

d)   making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services provided, products manufactured, distributed, sold or offered for sale, or rented by Defendant are in any way associated or connected with Plaintiffs;

e)   engaging in any other conduct constituting an infringement of the Luxury Brands Trademarks, of Plaintiffs' rights in, or to use or to exploit, said trademark, or constituting any weakening of Plaintiffs' names, reputations and goodwill.

II.      That Defendant be required to deliver to Plaintiffs for destruction all unauthorized materials bearing any of the Luxury Brands Trademarks in association with unauthorized goods and the means for production of same pursuant to 15 U.S.C. § 1118.

III.      Requiring Defendant to pay to Plaintiffs such damages for all of Defendants' profits derived from their unlawful conduct and/or Plaintiffs' lost profits from sales of genuine goods due to Defendants' infringement, counterfeiting, false designation of origin, unfair competition trebled to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. § 1117(a)-(b), or alternatively, statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act.

IV.      Ordering that Defendant compensate Plaintiffs for the costs of this action, reasonable attorneys' fees, investigative fees and pre-judgment interest according to 15 U.S.C. §

1117(b).

    V.      Plaintiffs be awarded their actual damages and attorneys' fees pursuant to  N.Y. Gen. Bus. L. § 349.

    VI.      Defendant be required to pay pre-judgment interest on all damages and profits awards.

    VII.      Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiffs to apply to the Court at any time for such further orders and interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

    VIII.      Ordering that pursuant to 11 U.S.C. § 523(a)(6), Defendant be prohibited from a discharge under 11 U.S.C. § 727 for malicious, willful, and fraudulent injury to Plaintiffs.

    IX.      Awarding to Plaintiffs such other and further relief as the Court may deem just and proper, together with the costs and disbursements that Plaintiffs have incurred in connection with this action.

                                  **LEE LAW PLLC**

Dated: July 16, 2020

                                    Michael Lee (ML 6353)
                                    Lee Law PLLC
                                    579 Fifth Avenue
                                    14th Floor
                                    New York, NY 10017
                                    Telephone: (212) 621-8239

                                    *Attorneys for Plaintiffs*